UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| REGINA IRVING, | ) | CASE NO. 1:16CV1391 |
| Plaintiff, | ) ) ) | JUDGE SARA LIOI |
| v. | ) ) | Magistrate Judge George J. Limbert |
| NANCY A. BERRYHILL[1], ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| Defendant. | ) ) | |

Plaintiff Regina Irving ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on October 13, 2016, Plaintiff asserts that the administrative law judge ("ALJ") misapplied *Drummond* and issued a decision not supported by substantial evidence. ECF Dkt. #14 at 8-12. Defendant filed a response brief on December 14, 2016. ECF Dkt. #17. Plaintiff did not file a reply brief.

For the following reasons the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

## I. PROCEDURAL HISTORY

Prior to filing the applications for DIB and SSI that are the subject of the instant case, Plaintiff filed an application for SSI on May 29, 2009, which was denied at the state agency level. ECF Dkt. #12 ("Tr.") at 67, 137.[2] After a hearing before an ALJ, a decision denying Plaintiff's application was issued on April 27, 2011. *Id.* at 67, 134.

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

In October 2012, Plaintiff filed a new application for SSI and an application for DIB.[3] Plaintiff's claims were denied initially and upon reconsideration. *Id.* at 67. Following the denial of her claims, Plaintiff requested a hearing. *Id.* The hearing was held on October 30, 2014, and Plaintiff, represented by an attorney, appeared and testified. *Id.* A vocational expert ("VE") also provided testimony at the hearing. *Id.* On December 22, 2014, the ALJ issued a decision denying Plaintiff's claims. *Id.* at 64. Subsequently, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. *Id.* at 1. Accordingly, the December 22, 2014, decision issued by the ALJ stands as the final decision.

Plaintiff filed the instant suit seeking review of the ALJ's December 22, 2014, decision on June 8, 2016. ECF Dkt. #1. On October 13, 2016, Plaintiff filed a brief on the merits. ECF Dkt. #14. Defendant filed a response brief on December 14, 2016. ECF Dkt. #17. Plaintiff did not file a reply brief.

## II. RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

### A. Medical Evidence

At the hearing, Plaintiff stated that she considered her urinary issues, mainly the frequency, to be her biggest problem at that time.[4] Tr. at 34. Plaintiff's urinary incontinence was not discussed in great length in the prior ALJ's decision, as he determined that it was not a severe impairment. *Id.* at 139. Regarding her urinary incontinence, Plaintiff complained of problems relating to incontinence in July 2008, indicating a daytime frequency of six times and a

---

[3]The ALJ and Defendant refer to the application for DIB as an application for Medicare Coverage. Tr. at 72; ECF Dkt. #17 at 2 (citing Tr. at 253). Plaintiff refers to the application for DIB as an application for "Social Security Disability benefits." ECF Dkt. #14 at 3 (citing Tr. at 253). In any event, it is clear that both parties and the ALJ are referring to an application made by Plaintiff under Title II of the Social Security Act, often referred to by this Court as an application for DIB. Moreover, the actual application made by Plaintiff pursuant to Title II, and cited by both Plaintiff and Defendant, is titled "Application Summary for Disability Insurance Benefits." Accordingly, the undersigned refers to the application made by Plaintiff pursuant to Title II as an application for DIB.

[4]A detailed discussion of the testimony offered at Plaintiff's hearing is contained below in Section II(B) of the instant Report & Recommendation; Neither party presents a lengthy recitation of the relevant medical evidence. The undersigned agrees that a lengthy recitation of the voluminous medical record in this case is unnecessary considering the claims addressed herein.

nighttime frequency of once occasionally. Tr. at 617. In June 2009, Plaintiff complained of incontinence during the daytime and needing to wear two pads per day, as well as nocturia two hours after going to bed. *Id.* at 665. According to treatment notes from August 2011, Plaintiff had not experienced dysuria ever since her diabetes became "well controlled." *Id.* at 792. On August 3, 2012, Plaintiff reported that she woke during the night to use the bathroom and due to pain, but was able to go back to sleep. *Id.* at 1366. In July 2013, Plaintiff indicated that urine leakage typically occurred when she was coughing or standing, though she had some episodes of urinary incontinence. *Id.* at 1556. Continuing, Plaintiff estimated that she experienced one episode of incontinence per week and complained of a urinary frequency of as much as once per hour, though this typically happened about one day per week. *Id.*

While the prior ALJ did not discuss Plaintiff's urinary issues at great length in his decision, there was a detailed discussion of the medical evidence from 2004 through 2010 regarding Plaintiff's knee problems and other issues pertinent to the prior ALJ's residual functional capacity finding ("RFC").[5] *See* Tr. at 141-44. On August 1, 2011, it was noted that Plaintiff had been exercising regularly and that she had lost approximately ninety pounds, although at that time she was status post knee surgery for a meniscal tear, but would "return to activity soon." *Id.* at 791. In early September 2011, Plaintiff complained of severe pain in her left knee when straightening fully, and extreme pain in her right knee when walking on a flat surface, going up and down stairs, lying in bed at night, or sitting. *Id.* at 709-10. On September 29, 2011, Plaintiff underwent surgery on her right knee consisting of a diagnostic and operative arthroscopy, partial medial meniscetomy, and debridement of anticular cartilage in two compartments. *Id.* at 700. Following the surgery, it was noted in November 2011 that Plaintiff was doing well and that her ambulation was improving. *Id.* at 1583. In October 2012, Plaintiff reported worsening pain in her left knee, and a physical exam revealed crepitus with motion,

---

[5]In addition to claiming that the ALJ ignored substantial evidence regarding her bladder issues, Plaintiff asserts that the ALJ ignored substantial evidence regarding her bilateral knee osteoarthritis. ECF Dkt. #14 at 10-12.

-3-

stable ligaments, medial tenderness, and tenderness with patellofemoral compression and entrapment. Tr. at 1586.

Plaintiff was not ready to discuss a total knee arthroplasty in February 2013, and instead chose to proceed with a cortisone injection. *Id.* at 1591. A consultative examination performed by Dorothy Bradford, M.D., revealed that Plaintiff did not use mobility aids and had a normal gait. *Id.* at 1543. Further, Dr. Bradford's examination revealed that Plaintiff had normal gait, normal sensations, normal reflexes, normal muscle strength, and normal ability to perform fine and gross manipulations. *Id.* at 1543-44. Dr. Bradford opined that Plaintiff should be limited to sedentary activity with permission for frequent bathroom breaks. *Id.* at 1544. In October 2013, Plaintiff reported to Michael E. Moore, M.D. that the cortisone injections did not provide relief, and Dr. Moore administered Synvisc-One injections in both knees in November 2013.[6] *Id.* at 1605, 1619.

In addition to the treatment notes regarding Plaintiff's issues with her bladder and knees, on January 16, 2012, Ashish Aggarwal, M.D., assessed bilateral hand numbness and stiffness, and indicated that he was concerned about diabetic neuropathy versus carpal tunnel syndrome or neuropathy from other causes. Tr. at 820. Additionally, in May 2012, Howard Smith, M.D., assessed polyneuropathy in diabetes with paresthesias, myalgia, and osteoarthritis of the bilateral knee. *Id.* at 867. In January 2013, state agency reviewing physician Leon Hughes, M.D., adopted the prior ALJ's decision, with the additional limitation that Plaintiff avoid even moderate expose to hazards in the workplace. *Id.* at 169. Likewise, in June 2013, state agency reviewing physician Lynne Torello, M.D., adopted the prior ALJ's decision, with the additional

---

[6]Plaintiff also cites a disability form, allegedly prepared by Dr. Moore, indicating that she was disabled as the result of diabetes mellitus, neuropathy, knee issues, hypertension, and urinary leakage. ECF Dkt. #14 at 8 (citing Tr. at 1625). However, the portion of the record cited by Plaintiff is a single page form that does not list these medical conditions as disabling, but instead lists the following as disabling medical conditions: diabetes; neuropathy; knee issues; high blood pressure; bowel issues, leaking; and vertigo. Tr. at 1625. Further, it is unclear from the record who prepared this form, which: was filed with medical records from Elizabeth Mease, M.D., dated January 16, 2012, through December 4, 2012; was dated December 4, 2012; and did not include a signature or any other indication of who completed the form. *Id.* at 1623, 1625. In any event, the form cited by Plaintiff does not support her assertion that Dr. Moore indicated that she was disabled at some point in late 2013; this is evidenced, in part, by the fact that the form was dated December 4, 2012. *See id.* at 1625.

limitation that Plaintiff avoid even moderate expose to hazards in the workplace. *Id.* at 193. Dr. Torello also noted that Plaintiff reported two new conditions, namely, diabetic polyneuropathy and myalgia. *Id.* at 185.

### B. Testimonial Evidence

At the hearing held on October 30, 2014, Plaintiff was present and represented by counsel. Tr. at 20. After explaining the hearing procedure, the ALJ examined Plaintiff. *Id.* at 26. Plaintiff testified that she lived alone and was able to do the chores, although it did take her longer to do the chores "at times." *Id.* at 27. Continuing, Plaintiff indicated that she cooked, washed her laundry, and cleaned her home. *Id.* Plaintiff stated that she shopped on her own for lighter items at a store near her home, but waited to shop for heavier items until her daughter could drive her to the store. *Id.* at 28. According to Plaintiff, the grocery store was a two or three minute walk from her home and she walked to the store to shop. *Id.* Plaintiff stated that she did not drive and never had driven in the past, and instead used public transportation to travel. *Id.* at 28-29.

Next, Plaintiff testified that she had a daughter that she saw about twice a week, but that she did not have any friends that she saw on a regular basis and that she did not belong to any organizations, clubs, or churches. Tr. at 29. Plaintiff stated that she had a basic cell phone (not a smart phone), and that she did not have internet access or a computer at her house. *Id.* at 30. Continuing, Plaintiff indicated that she did not listen to music and did not watch as much television as she had in the past. *Id.* Plaintiff testified that she read and liked to go to the library. *Id.* When asked how she spent a normal day, Plaintiff stated that she tried to clean or "get something done," iced her knees or applied heat, and that going to the bathroom was an issue due to the frequency. *Id.* Plaintiff testified that she was not working at the time of the hearing. *Id.*

When asked about what she considered to be her biggest problem at the time, Plaintiff testified that her urinary issue was "probably the biggest problem" because of the frequency. Tr. at 34. Plaintiff stated that she also had to deal with leakage issues. *Id.* at 36. The ALJ then asked Plaintiff what time she woke up in the morning. *Id.* at 37. Plaintiff testified that she

typically woke around 6:30 A.M. or 7:00 A.M., and usually ate dinner before 8:00 P.M. *Id.* at 36-37. The ALJ then asked Plaintiff how many time she would need to use the bathroom during the approximately twelve-hour period from when she woke until she ate dinner. *Id.* Plaintiff estimated that she would need to use the bathroom close to twenty times in this time period, and that each restroom trip would take ten to fifteen minutes. *Id.*

Following questioning by the ALJ, Plaintiff was examined by her attorney. Tr. at 38. Plaintiff testified that she had arthritis in both of her knees and that her knees ached. *Id.* at 38-39. According to Plaintiff, standing and walking could be difficult so she kept her activities in her neighborhood. *Id.* at 39. Plaintiff stated that she could stand or walk for fifteen to twenty minutes, and that her pain was worse after standing or walking for this period of time. *Id.* 39-40. Continuing, Plaintiff indicated that therapy helped initially, but over time she began having additional problems in her right knee. *Id.* at 40.

Plaintiff was then asked about the neuropathy that had developed as a result of her diabetes. Tr. at 41. In response, Plaintiff testified that the neuropathy caused numbness in her hands and feet, and, at its worst, the neuropathy caused pain. *Id.* Plaintiff indicated that the neuropathy also caused some problems with the use of her hands. *Id.* Next, Plaintiff testified that she experienced shortness of breath due to anxiety "maybe once a week," and that it lasted for thirty minutes to an hour. *Id.* at 42. Plaintiff stated that her energy could "be pretty low at times," and that it could be hard to do basic everyday activities. *Id.* at 43. Continuing, Plaintiff indicated that some days were better than others, and that she experienced decreased energy levels three or four times per week. *Id.* Plaintiff stated that she needed to lay down five times per day for about half an hour each time. *Id.*

The ALJ then questioned Plaintiff a second time. Tr. at 44. Plaintiff testified that her weight had fluctuated a little since she filed her applications in 2012 to the time of the hearing, and that she had lost eighty pounds over the years 2010 and 2011. *Id.* at 44-45. The ALJ then asked Plaintiff if she still watched her grandchildren, and Plaintiff indicated that she did not watch her grandchildren "as much as [she] used to." *Id.* at 45.

Next, that ALJ examined the VE. Tr. at 48. The ALJ posed a hypothetical individual with the same age, education, and past work as Plaintiff who could: occasionally lift and carry twenty pounds and frequently carry ten pounds; stand and walk for six hours in an eight-hour workday; perform limited pushing and pulling in the right lower extremity; occasionally operate right foot pedals; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; and occasionally reach overhead with her left arm. *Id.* at 49. Additionally, the ALJ added that this hypothetical individual must avoid even moderate exposure to hazards such as unprotected heights and hazardous machinery. *Id.* at 50. The VE testified that Plaintiff could not perform her past relevant work, but could perform work as a cashier II, retail clerk, or bench assembler, and that other jobs would exist for such an individual beyond these three examples. *Id.* at 50-51.

The ALJ then added the limitations that the hypothetical individual would require extra breaks in order to go to the restroom one to three times per hour, for five minutes at a time. Tr. at 51. The VE indicated that there ultimately would be no jobs available for such an individual. *Id.* The ALJ then removed this additional limitations, and replaced it with the limitations that this individual would be absent one to two times per month due to anxiety. *Id.* at 52. The VE testified that there would be no jobs available for such an individual. *Id.*

Next, the ALJ posed a new hypothetical individual with the age, education, and past work as Plaintiff who could: occasionally lift and carry ten pounds and frequently carry five pounds; stand and walk for two hours in an eight-hour workday; perform limited pushing and pulling in the right lower extremity; occasionally operate right foot pedals; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; and occasionally reach overhead with her left arm. Tr. at 52-53. This hypothetical individual must also avoid even moderate exposure to hazards such as unprotected heights and hazardous machinery. *Id.* at 53. The VE testified that this hypothetical individual could not perform Plaintiff's past work, but could perform work as an inspection worker, assembler, or sorter, and that additional jobs would be available for this individual. *Id.* Continuing, the VE stated that there would be no jobs available for this hypothetical individual

if either the limitation to allow for additional restroom breaks or the limitation to allow for missing one or two days of work per month were imposed on the hypothetical individual. *Id.* at 54. Following the testimony from the VE, the ALJ concluded the hearing.

### III. RELEVANT PORTIONS OF THE ALJ'S DECISION

Following the hearing held on October 30, 2014, the ALJ issued a decision on December 22, 2014. Tr. at 64. The ALJ first explained that Plaintiff had filed a previous application for SSI on May 26, 2009, and that the application had been denied on April 27, 2011. *Id.* at 67. Continuing, the ALJ stated that the prior ALJ had made the following finding regarding Plaintiff's RFC:

> After careful consideration of the entire record... [Plaintff] has the [RFC] to perform light work as defined in 20 C.F.R. 416.967(b) except she can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally stoop, kneel, crouch, or crawl; can frequently balance; can occasionally reach overhead with the left upper extremity, and can occasionally push, pull, and operate foot pedal with the right lower extremity.

*Id.*

Continuing, the ALJ stated that in the Sixth Circuit, an ALJ is obligated to adopt the findings of a prior ALJ absent any significant change in the claimant's condition. *Id.* The ALJ noted that the state agency reviewing physicians adopted the prior ALJ's RFC finding pursuant to AR-98-4, and that she was also adopting the prior ALJ's RFC finding for the reasons set forth in the decision. *Id.* Next, the ALJ indicated that the prior ALJ issued his decision denying DIB on April 27, 2011, and that Plaintiff's date last insured for DIB was December 31, 2010. *Id.* at 68. Accordingly, the ALJ dismissed Plaintiff's application for DIB pursuant to the doctrine of *res judicata*, and stated that what remained of the decision dealt solely with Plaintiff's SSI application.[7] *Id.*

At the outset of her findings of fact and conclusions of law, the ALJ restated that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010. Tr. at 70. The ALJ determined that Plaintiff had not engaged in substantial gainful

---

[7]Plaintiff does not appear to take issue with the dismissal of her application for DIB under *res judicata*, despite seeking review of its denial in the Complaint. *See* ECF Dkt. #1 at 1; Tr. at 22-23; ECF Dkt. #14.

activity since September 15, 2005, the alleged onset date.[8] Continuing, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus; hypertension; obesity; chondromalacia patella (right knee); torn meniscus (right knee); osteoarthritis (bilateral knees); degenerative disc disease (lumbar); and diabetic neuropathy. *Id.* The ALJ then found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

After careful consideration of the record, the ALJ adopted the prior ALJ's RFC finding and found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations: limited pushing and pulling in the right lower extremity; occasionally operate right foot pedals; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; occasionally reach overhead on the left; and avoid even moderate exposure to hazards, such as unprotected heights and hazardous machinery. *Id.* at 71-72. The ALJ found that while Plaintiff's medically determination impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. *Id.* at 72. Continuing, the ALJ noted that the state agency reviewing physicians adopted the RFC finding of the prior ALJ, and indicated that she saw no reason to disturb the prior ALJ's findings. *Id.*

To support her decision, the ALJ relied on the following: evidence relevant to the amended onset date showed that Plaintiff's hypertension and diabetes were controlled; despite the arthroscopies performed in 2011, Plaintiff had a normal gait and did not use assistive devices by June 2013; no treating source opined that Plaintiff was disabled; Plaintiff's dysuria was controlled if her diabetes was controlled; and Plaintiff lived alone, performed her household chores, cooked, washed laundry, shopped, visited with family, went to the library, and handled

---

[8]At the hearing, Plaintiff amended the alleged onset date to October 1, 2012, the date her SSI application was filed. Tr. at 23-24, 277. The amended alleged onset date is also recognized by the ALJ in her decision. *Id.* at 68.

her finances. *Id.* at 72-73. Further, the ALJ noted Dr. Bradford's opinion that Plaintiff was limited to sedentary work with permission for frequent bathroom breaks. *Id.* at 72. The ALJ assigned little weight to Dr. Bradford's opinion because her examination showed normal gait, normal sensations, normal reflexes, normal muscle strength, and normal capacities for fine and gross manipulations. *Id.* at 72-73.

Next, the ALJ found that Plaintiff was unable to perform any past relevant work, was a younger individual on the alleged onset date, was able to communicate in English, and that the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. Tr. at 73. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 15, 2005, through the date of the decision. *Id.* at 74.

## IV. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity

> must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## VI.    LAW AND ANALYSIS

Plaintiff asserts that the ALJ misapplied *Drummond*, 126 F.3d 837 (6th Cir. 1997), to this claim. ECF Dkt. #14 at 8-12. *Drummond* stands for the principle that absent evidence of a change in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ. *Drummond*, 126 F.3d at 842; *see also* Acquiescence Ruling ("AR") 98-4(6). "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *United States v. Utah Const. & Mining Co.*, 384 U.S. 394, 422 (1966). In *Drummond*, the Sixth Circuit looked to whether substantial evidence was introduced to show that Plaintiff's condition changed significantly between the two hearing dates. *Drummond*, 126 F.3d at 843. The Court held that the Commissioner shoulders the burden of showing a change of circumstances to escape res judicata and substantial evidence was not introduced in order to find that the claimant's condition improved significantly between the two hearings so the subsequent ALJ was bound by the prior ALJ's determination. *Id*. The *Drummond* Court held that:

> Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ. We reject the Commissioner's contention that the Social Security Administration has unfettered discretion to reexamine issues previously determined absent new and additional evidence. To allow the Commissioner such freedom would contravene the reasoning behind 42 U.S.C. § 405(h) which requires finality in the decisions of social security claimants. Just as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner.

*Id*. at 842.

AR 98–4(6), issued post-*Drummond*, provides that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding." AR 98-4(6) applies *Drummond* to a claimant's RFC "or other findings required at a step in the sequential evaluation process for determining disability provided under 20 CFR 404.1520, 416.920 or 416.924, as appropriate, which was made in a final decision by an ALJ or the Appeals Council on a prior

-12-

disability claim." AR 98-4(6).  However, the "Commissioner's Acquiescence Rulings - like the Commissioner's Regulations - are not the supreme law of the land. 'It is, emphatically, the province and duty of the judicial department, to say what the law is,' *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803), [']and the [Commissioner] will ignore that principle at his peril.'" *Harris v. Astrue,* 2010 WL 3909495, at *5 (S.D. Ohio, 2010), adopted by 2010 WL 3909493 (S.D. Ohio 2010), quoting *Hutchison v. Chater*, 99 F.3d 286, 287–88 (8th Cir.1996) (other citations omitted) (brackets in *Hutchison*).  The Sixth Circuit has held that the opposite is also true, that "when a plaintiff previously has been adjudicated not disabled, she must show that her condition so worsened in comparison to her earlier condition that she was unable to perform substantial gainful activity." *Casey v. Sec'y of Health and Human Servs*., 987 F.2d 1230, 1232-1233 (6th Cir. 1993).

According to Plaintiff, the ALJ's reliance on the state agency physicians was legally erroneous and not supported by the record. *Id.* at 8-9.  Plaintiff states that the state agency physicians were not qualified to make a legal finding with respect to *Drummond*. *Id.* at 9. Additionally, Plaintiff claims that the ALJ erred by misapplying *Drummond* to this claim because that ALJ found Plaintiff's severe impairments included diabetic neuropathy and hypertension, two conditions that were not included in the prior ALJ's decision. *Id.*  Plaintiff avers that the ALJ's decision is a misapplication of *Drummond* as the ALJ could not have made these additional findings without new and additional evidence. *Id.*  Continuing, Plaintiff asserts that, having acknowledged the existence of additional severe impairments, the ALJ was required to evaluate the record fully and consider all of the Plaintiff's impairments when rendering a decision. *Id.* at 9-10.  Plaintiff asserts that since the ALJ found diabetic neuropathy and hypertension to be severe impairments, the ALJ failed to fully assess the evidence and explain her conclusions, as required. *Id.* at 10.

Next, Plaintiff claims that the ALJ ignored substantial evidence of Plaintiff's bladder issues when finding that her hyperactive bladder constituted a non-severe impairment. ECF Dkt. #14 at 10. Plaintiff states that the ALJ only discussed one item in the medical record despite Plaintiff's testimony indicating that her urination frequency had become worse and was her

-13-

biggest problem at that time. *Id.* Additionally, Plaintiff notes that Dr. Bradford opined that Plaintiff would require permission for frequent bathroom breaks at any potential job. *Id.* at 11. Plaintiff states that the VE expert's testimony indicates that the need for frequent bathroom breaks would preclude employment. *Id.* (citing Tr. at 51).

Continuing, Plaintiff also asserts that the ALJ ignored substantial evidence regarding her bilateral knee osteoarthritis. ECF Dkt. #14 at 11. Plaintiff avers that the evidence demonstrated continued bilateral knee pain, and that Plaintiff tried physical therapy, underwent surgery and injections, and was prescribed numerous pain medication in an effort to relieve her symptoms, all of which failed to provide lasting relief. *Id.* According to Plaintiff, the ALJ failed to discuss any of these records concerning Plaintiff's knees in the decision. *Id.* Plaintiff states that the RFC finding indicated that she could perform light work, but that new and substantial evidence exists relating to her knees that would impact her ability to perform light work, and thus an evaluation by the ALJ was required. *Id.* at 12.

Defendant contends that the ALJ addressed the medical evidence and opinion in determining the limitations for the RFC finding, and that substantial evidence supports her conclusions. ECF Dkt. #17 at 7. Continuing, Defendant states that the ALJ considered the evidence rendered after the prior ALJ's decision, issued on April 27, 2011, and reasonably concluded that there was no significant change in the limitations resulting from Plaintiff's mental or physical conditions, and, accordingly, found that her RFC remained essentially unchanged. *Id.*

Regarding Plaintiff's argument that the ALJ disregarded evidence of her bladder issues, Defendant asserts that the ALJ found a number of severe impairments, and accordingly considered all of the severe and non-severe impairments, including Plaintiff's bladder issues, when proceeding through the sequential analysis and assigning a RFC. ECF Dkt. #17 at 8-9. Defendant notes that the ALJ expressly considered: the diagnosis of hyperactive bladder and the complaints of frequent urination; medical records indicating that there was no dysuria when Plaintiff's diabetes was under control; and progress notes indicating that Plaintiff was able to manage her diabetes, resulting in no symptoms of dysuria. *Id.* at 9 (citing Tr. at 70, 792).

-14-

Additionally, Defendant states that the ALJ considered Dr. Bradford's opinion that Plaintiff should be limited to sedentary work with frequent bathroom breaks, and assigned the opinion little weight given other medical evidence showing that Plaintiff's dysuria resolved when her diabetes was under control. *Id.* Defendant asserts that the ALJ gave reasons, which were supported by the record, for affording little weight to Dr. Bradford's opinions, and thus it was reasonable for her to find that Plaintiff's condition did not deteriorate to the level opined by Dr. Bradford. *Id.*

Next, Defendant avers that the ALJ's decision to find that Plaintiff's condition did not require a more restrictive RFC (other than less than moderate exposure to hazards) than the RFC assigned by the prior ALJ was supported by the opinions of the state agency reviewing physicians. ECF Dkt. #17 at 9-10. Defendant states that Dr. Hughes and Dr. Torello, the state agency reviewing physicians, adopted the prior ALJ's RFC finding, while also adding a restriction against even moderate exposure to hazards. *Id.* at 10. Continuing, Defendant indicates that Dr. Hughes stated that Plaintiff had not reported dysuria to a treating physician. *Id.* Defendant also states that Dr. Torello's opinion took into account Dr. Bradford's opinion, but indicated Dr. Bradford's opinion was not supported by the medical record which indicated that Plaintiff had normal strength and only occasional numbness in her hands and feet. *Id.* In addition, Defendant notes that Dr. Torello considered Plaintiff's two new conditions - diabetic polyneuropathy and myalgia. *Id.* Further, Defendant indicates that Dr. Torella, like Dr. Hughes, adopted the prior ALJ's RFC finding because, among other reasons, Plaintiff's new complaint of dysuria was not reported to any treating physician and therefore not documented in progress notes. *Id.*

Defendant also states that the ALJ noted that despite Plaintiff's complaints of neuropathy and knee pain, Dr. Bradford's examination revealed normal gait, normal reflexes, normal muscle strength, and normal abilities for fine and gross manipulations. ECF Dkt. #17 at 10. Continuing, Defendant indicates that Dr. Bradford noted that Plaintiff had undergone knee surgeries in 2011, however, by 2013 Plaintiff exhibited normal gait without the use of assistive devices, and that these findings were not consistent with limitations for sedentary work. *Id.*

Additionally, Defendant states that the ALJ noted that: Plaintiff's dysuria was controlled when her diabetes was controlled; and evidence showed that Plaintiff lived independently, performed her own household chores, cooked, washed laundry, and went to the library. *Id.* at 10-11.

Defendant then asserts that opinions of state agency medical consultants may be given significant weight if the opinions are supported by objective findings and consistent with the other evidence of record. ECF Dkt. #17 at 11 (citing 20 C.F.R. § 416.927(c)(3)-(4), (e)(2)(ii)). According to Defendant, the ALJ reasonably gave great weight to the opinions of the state agency reviewing physicians. *Id.* Defendant also asserts that the final responsibility for deciding the RFC is reserved to Defendant. *Id.* (citing *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed.Appx. 435, 439 (6th Cir. 2010)). Finally, Defendant indicates that the burden of proving disability is on Plaintiff, and states that she has not met that burden. *Id.* at 13 (citing 42 U.S.C. § 423(d)(5)(A)).

Plaintiff's arguments are without merit. First, Plaintiff asserts that the ALJ primarily relied on the fact that the state agency reviewing physicians adopted the prior ALJ's RFC finding when she also adopted the prior ALJ's RFC finding. *See* ECF Dkt. #14 at 8-9. This characterization of the ALJ's decision ignores the sections of the opinion immediately following the ALJ's indication that she was adopting the prior ALJ's RFC finding, which provide the following reasons for the adoption: the evidence showed that Plaintiff's hypertension was controlled; the evidence showed that Plaintiff's diabetes was controlled; despite undergoing surgeries in 2011, by 2013 Plaintiff had a normal gait without the use of assistive devices; no treating source opined that Plaintiff was disabled; Dr. Bradford's examination showed normal gait, normal sensations, normal reflexes, normal muscle strength, and normal capacities for fine and gross manipulations; Plaintiff's dysuria was controlled when her diabetes was controlled; and Plaintiff lived alone, performed household chores, cooked, washed laundry, shopped, visited family, went to the library, and handled her finances. Tr. at 72-73. The ALJ did not simply adopt the prior ALJ's findings because the state agency reviewing physicians did so, as suggested by Plaintiff, but rather provided a number of reasons why she determined that the prior ALJ's RFC finding reflected Plaintiff's RFC at the time of the decision.

-16-

Next, Plaintiff claims that the ALJ misapplied *Drummond* because the ALJ's inclusion of two new severe impairments, diabetic neuropathy and hypertension, established that there is "new and additional evidence" that is "material evidence." ECF Dkt. #14 at 9 (citing *Drummond*, 126 F.3d at 842; AR 98-4(6)). Plaintiff cites no caselaw, statute, or regulation stating that the inclusion of new severe impairments automatically establishes "new and additional evidence" that is "material evidence." Rather, in the instant case, the ALJ recognized that Plaintiff had been diagnosed with two additional severe impairments since the prior ALJ's decision, took these severe impairments into account as she proceeded through the sequential evaluation, and determined that the prior ALJ's RFC finding remained an accurate representation of Plaintiff's RFC. Further, Plaintiff does not state, or attempt to explain, how the inclusion of diabetic neuropathy and hypertension warrant a different RFC finding. Moreover, the ALJ addressed both Plaintiff's hypertension and diabetic neuropathy expressly, stating that the evidence showed that both the hypertension and diabetic neuropathy were controlled. *See* Tr. at 72. As such, Plaintiff has failed to demonstrate that the ALJ misapplied *Drummond*.

Plaintiff next argues that the ALJ ignored substantial evidence of her bladder issues when finding that her hyperactive bladder constituted a non-severe impairment. ECF Dkt. #14 at 10. When addressing Plaintiff's bladder issues, the ALJ found them to be non-severe because the record showed that she had no dysuria when her diabetes was controlled. Tr. at 70. In support of her argument, Plaintiff cites to her own testimony stating that her need to urinate could be up to twenty times in a twelve-hour period, with each instance lasting ten or fifteen minutes. ECF Dkt. #14 at 10 (citing Tr. at 35, 37). Plaintiff also states that she took medication for her urinary problems, which failed to provide relief, and cites to five pieces of medical evidence she believes support her contentions regarding the severity of her urinary problems. *Id.* at 10-11.

As for Plaintiff's testimony indicating that she urinated up to twenty times in a twelve-hour period, with each instance lasting ten to fifteen minutes, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. Tr. at 72. The ALJ's credibility determination is supported by the five items

Plaintiff cites in an attempt to establish that her urinary problems constituted a severe impairment. The first piece of evidence cited by Plaintiff states only that she rose at night to urinate or because of joint pain. ECF Dkt. #14 at 11 (citing Tr. at 855). The next piece of evidence cited by Plaintiff describes leakage and states that Plaintiff "sometimes [urinated] as frequently as every hour, though this typically happens around one day per week." *Id.* (citing Tr. at 1556). Continuing, the third piece of evidence cited by Plaintiff makes no mention of urination problems, nor does the remainder of that particular medical report. *Id.* (citing Tr. at 1722). The fourth piece of evidence cited by Plaintiff indicates stress incontinence and urge incontinence, and notes that Plaintiff used four thin pads per day, but says nothing about urination frequency. *Id.* (citing Tr. at 1725). Finally, the last piece of evidence cited by Plaintiff indicates that she had urethral diverticulum, but states nothing about urination frequency. *Id.* (citing Tr. at 1727).

While the second piece of evidence does indicate that Plaintiff had approximately one day per week during which she needed to urinate hourly, even this piece of evidence does not support Plaintiff's testimony stating that she urinated approximately twenty times in a twelve-hour period, with each instance lasting ten to fifteen minutes. *See* Tr. at 35, 37. Additionally, Plaintiff cites Dr. Bradford's opinion that Plaintiff would require frequent bathroom breaks, however, the ALJ provided a proper reason for discounting Dr. Bradford's opinion, namely that it was inconsistent with the examination findings. *See* Tr. at 72-73. Plaintiff has failed to show that the ALJ erred when determining that her bladder issues did not constitute a severe impairment. Accordingly, Plaintiff has failed to show that the ALJ ignored substantial evidence regarding her bladder issues.

Finally, Plaintiff claims that the ALJ ignored substantial evidence regarding her bilateral knee osteoarthritis. ECF Dkt. #14 at 11. However, the ALJ did recognize that Plaintiff underwent two knee surgeries in 2011, and then stated that Plaintiff had a normal gait without the use of assistive devices in 2013. Tr. at 72. Further, when explaining her reasoning for assigning little weight to Dr. Bradford's opinion, the ALJ indicated that Dr. Bradford's examination showed normal gait, normal sensations, normal reflexes, normal muscle strength,

and normal capacities for fine and gross manipulation.. *Id.* at 72-73. The ALJ also described Plaintiff's activities of daily living, which included living alone, performing chores, shopping, and going to the library. *Id.* at 73. Although Plaintiff points to pieces of evidence she believes the ALJ ignored, the ALJ provided substantial evidence supporting her RFC determination. Accordingly, Plaintiff has failed to show that the ALJ ignored substantial evidence regarding Plaintiff's bilateral knee osteoarthritis.

For the above stated reasons, the undersigned recommends that the Court find that the ALJ properly applied *Drummond* and that the ALJ's decision was based on substantial evidence.

## VII. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

Date: June 9, 2017  /s/George J. Limbert
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).